IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CASE NO. 2:25-cr-00207-BL |
| | ) |
| JURAND WELLS | ) |
| | ) |

## **ORDER**

Defendant Jurand Wells faces an indictment on one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) and one count of illegal possession of a machinegun in violation of 18 U.S.C. § 922(o). He has filed a motion to suppress evidence found during a search of his home that was conducted pursuant to a search warrant issued by the Montgomery County District Court. (Doc. 54). This case is before the court on the recommendation of the United States Magistrate Judge that the Defendant's motion to suppress be denied. (Doc. 62). Also before the court are the Defendant's objections to the recommendation. (Doc. 66).

Upon an independent and *de novo* review of the record, the court finds that the Defendant's objections should be overruled and agrees with the recommendation of the United States Magistrate Judge that the motion to suppress should be denied. *See* 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a *de novo*

determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

The Defendant's motion to suppress argues that the affidavit on which the search warrant was based contained false statements and that, even if probable cause existed initially, the search warrant was stale by the time that it was executed. In his motion, the Defendant provided a summary of the evidence the police had obtained by the time of the issuance of the search warrant, correcting alleged falsities in the affidavit provided by Deputy Humane Officer Leslie Taylor:

> Unidentified bystanders at the scene of the shooting indicated (without giving statements or their names) that the person who shot the dog lived at a certain address on Rosa L. Parks Avenue. They did not name [the Defendant] or provide any detailed description beyond perhaps pointing to or naming an address. Separately, the dog's owner (who was not present for the shooting) told Officer Taylor about a dispute the day before, in which [the Defendant] had argued over a service charge at a local car wash/grocery, suggesting a possible motive or grudge. Police then went to the Rosa L. Parks address (where [the Defendant's] family lived but [the Defendant] did not) and that family gave officers [the Defendant's] actual address. Based on these sparse facts, Officer Taylor sought a warrant four days later.

(Doc. 61 at 5). In objecting to the recommendation of the Magistrate Judge, the Defendant provided another summary of the evidence, asserting that it was more accurate than the summary provided in Deputy Taylor's affidavit:

> Police knew that someone had shot a dog, and unknown bystanders claimed to have seen the shooter and pointed out an address where that person *might* live. Those tipsters could not name the shooter; they were essentially anonymous eyewitnesses. Separately, the store/dog owner (not an eyewitness to the shooting) told Officer Taylor about a prior

2

> dispute with [the Defendant], suggesting [the Defendant] had a motive to be upset (having been refused service the day before). Acting on the tip about the address, officers went to that location and spoke with [the Defendant's] sister, who confirmed [the Defendant's] name and association with that residence.

(Doc. 66 at 5) (emphasis in original).

In his summaries, the Defendant fails to include the fact that one of the eyewitnesses to the shooting telephoned Deputy Taylor after he left the scene of the shooting and told Deputy Taylor that the shooter had reappeared at the scene with a firearm; Deputy Taylor promptly returned to the scene and observed the suspect shooter walking into a house; Deputy Taylor informed the Montgomery Police Department ("MPD") of what he had observed; and MPD visited that house and no one answered the door. That house was the Defendant's residence, the subject of the search warrant, where the Defendant was discovered with a firearm. These facts were stated in Deputy Taylor's affidavit. None of these facts are addressed in the Defendant's motion to suppress; he has not challenged their veracity. Therefore, the Magistrate Judge includes these facts in her "modified affidavit," which alters Deputy Taylor's statements to correct the false statements and misleading implications the Defendant finds in the original affidavit.

Aside from the Defendant's omission of Deputy Taylor's telephone call with one of the anonymous witnesses and his sighting of the suspect walking into the Defendant's residence, the court does not see any significant difference between the

3

Defendant's summaries of the facts and the "modified affidavit" the Magistrate Judge set forth in her recommendation. Both versions are altered according to the Defendant's arguments. Even considering only the facts approved by the Defendant, the court determines that there were four key pieces of information that, when taken together, would have provided probable cause to search the Defendant's residence. Therefore, the Defendant has failed to satisfy his burden and is not entitled to a *Franks* hearing. *See United States v. Novaton*, 271 F.3d 968, 987 (11th Cir. 2001) ("[I]n order to be entitled to relief[,] a defendant must show not only that misrepresentations or omissions were intentionally or recklessly made, but also that, absent those misrepresentations or omissions, probable cause would have been lacking.").

The four key facts in the modified affidavit are as follows:

(1) Anonymous eyewitnesses "were able to give a description of the suspect as they have seen him regularly." (Doc. 54-1 at 1). The witnesses also gave law enforcement a detailed account of the shooting. (Doc. 54-2).

(2) The owner of the store and of the dog told law enforcement that he and the Defendant had a dispute the day before the shooting.

(3) When MPD went to the address provided by the anonymous eyewitnesses, they learned that the Defendant's family lived there, and the family provided law enforcement with the Defendant's actual address.

4

(4) Later on the day of the shooting, Deputy Taylor was told by one of the eyewitnesses (who said that they saw the shooter regularly and saw the shooting itself) that the shooter was back on the scene with a gun. Deputy Taylor arrived back on the scene and saw the suspected shooter walk down the street and into a house. MPD attempted to visit that house, but no one responded to the door. (Doc. 61 at 8). That house was the Defendant's residence—the address that the Defendant's family provided to law enforcement.

The Defendant's first objection to the recommendation of the Magistrate Judge is that it "gave undue credit to anonymous allegations that were uncorroborated or of dubious reliability." (Doc. 66 at 5). The Defendant argues that "[t]he core information implicating [the Defendant] came from witnesses who refused to identify themselves or formally attest to what they saw" and that such anonymous tips were insufficient to supply probable cause justifying the warrant. (Doc. 66 at 5–6). He points out that "no witness ever actually identified [the Defendant] by name as the perpetrator" and that, as a result, the judge who issued the search warrant "was asked to authorize a search of [the Defendant's] home without any known eyewitness affirming, under their own identity, that [the Defendant] committed the crime." (Doc. 66 at 6).

The Supreme Court has held that probable cause to support a search warrant exists when "there is a fair probability that contraband or evidence of a crime will

5

be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The tips obtained by law enforcement in this case, albeit anonymous, were sufficiently corroborated by the information law enforcement gleaned from visiting the Defendant's family, speaking with the store/dog owner, and watching the Defendant walk to his house after being identified as the shooter. The information that law enforcement obtained from the anonymous informants (the address of the Defendant's family and the identification of the shooter just before he walked into the Defendant's house) was sufficiently corroborated by the totality of the evidence. Contrary to the Defendant's argument, the law does not require a statement by an eyewitness identifying a perpetrator by name to establish probable cause for a search warrant.

The Defendant asserts that, "[i]n a *Franks*[*v. Delaware*, 438 U.S. 154 (2019),] inquiry, the Court must place itself in the shoes of the original magistrate, now armed with the true facts, and ask whether a warrant would still issue." (Doc. 66 at 7). Here, "even assuming the Defendant meets the first prong of the *Franks* analysis, the totality of the circumstances presents a fair probability that illegal activity was occurring." *See United States v. Lausane*, 2025 WL 2681925, at *2 (M.D. Ala. Sept. 19, 2025). Therefore, the court finds that a "substantial basis for probable cause existed for the warrant on the face of the affidavit even when modified under *Franks*." *See id.* The Defendant bears the burden of showing that, "absent [the]

6

misrepresentations or omissions, probable cause would have been lacking." *United States v. Novaton*, 271 F.3d 968, 987 (11th Cir. 2001). Because the Defendant fails to make that showing, his motion to suppress is due to be denied without a hearing. *See United States v. Kapordelis*, 569 F.3d 1291, 1309–10 (11th Cir. 2009).

The Defendant's second objection to the recommendation appears to merely re-assert his argument that the search warrant was stale by the time it was executed. The shooting occurred on February 14, 2025, the affidavit was issued four days later (on February 18, 2025), and the search warrant was executed three days later (on February 21, 2025), amounting to a total of seven days from the crime to the search. The Defendant argues that the affidavit offered no facts indicating that the firearm would remain at his residence after seven days, "especially given that firearms are readily movable and [the Defendant] was actively evading police." (Doc. 66 at 8).

The Eleventh Circuit has recognized that there is no fixed formula for staleness; courts assess this issue case-by-case. *See United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994). While length of time is a factor, courts should also consider "the maturity of the information, nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched." *Id.*

The Defendant's second objection is due to be overruled because, as the Magistrate Judge concluded, the probable cause that existed at the time of the search

7

did not dissipate during the passage of seven days.[1] Although the Defendant certainly *could have* disposed of the gun and any other evidence of the shooting within that amount of time, there was still "a fair probability that contraband or evidence of [the] crime w[ould] be found in [his house]." *See Gates*, 462 U.S. at 238.

In conclusion, upon a de novo review of the record, the court agrees with the Magistrate Judge that the Defendant's motion to suppress is due to be denied. Accordingly, for the reasons stated, and for good cause, it is **ORDERED** as follows:

(1)   The Defendant's objections (Doc. 66) are overruled.

(2)   The United States Magistrate Judge's recommendation (Doc. 62) is **ADOPTED**.

(3)   The Defendant's motion to suppress (Doc. 54) is **DENIED**.

**DONE** and **ORDERED** on this the 18th day of December, 2025.

BILL LEWIS
UNITED STATES DISTRICT JUDGE

---

[1] The Magistrate Judge relied in part on cases involving an ongoing crime; specifically, possession of a firearm by a convicted felon. (Doc. 62 at 19–20); *See United States v. Piloto*, 562 F. App'x 907, 913 (11th Cir. 2014); *United States v. Arcurms*, 2021 WL 3168548, at *3–4 (S.D. Fla. July 26, 2021). Because the crime at issue in this case (at the time of the issuance and execution of the search warrant) was an isolated incident of cruelty to an animal, the court finds the cases the Magistrate cited involving isolated incidents more persuasive than those involving ongoing crimes. (Doc. 62 at 17–19); *See United States v. Lopez*, 649 F.3d 1222, 1246 (11th Cir. 2011); *United States v. Bervaldi*, 226 F.3d 1256, 1264 (11th Cir. 2000).